**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 0:21-cv-61376-JEM**

| | |
|---|---|
| JILL ABERCROMBIE, on behalf of herself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| TD BANK, N.A., | ) ) |
| Defendant. | ) |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, Jill Abercrombie, on behalf of herself and the Settlement Class[1], under Federal Rule of Civil Procedure 23(e)(2), respectfully moves the Court, in conjunction with the final approval hearing scheduled for September 7, 2022, to enter the proposed Final Approval Order. The Final Approval Order will grant final approval to the Settlement Agreement and Release (the "Settlement"), ECF No. 28-1, allowing the Settlement to become effective, the Settlement benefits to be distributed to the Settlement Class, and for judgment to be entered on the Settlement, providing the Defendant with the Release and fully resolving this Action.

**INTRODUCTION**

The Court should grant final approval to the Settlement because the Settlement provides substantial relief to the Settlement Class, this Action satisfies all the requirements for class certification for settlement purposes, and all of the relevant factors under Federal Rule of Civil Procedure 23(e)(2) favor approval. The Settlement, which creates a Settlement Fund of $4,245,000.00, inclusive of all attorneys' fees and expenses, Settlement Administration Costs, and

---

[1] All capitalized terms have the same meanings set forth in the Settlement.

any Service Award approved by the Court, is an excellent result for the Settlement Class—representing a recovery of 33% of the maximum damages that Plaintiff argued were at issue in this Action, and over 80% of the maximum damages Defendant argued could be available to the putative class after factoring in the release of claims in another class action settlement involving Defendant. *See* Joint Declaration of Lynn A. Toops, Jeffrey D. Kaliel, and Jeff Ostrow in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Incorporated Memorandum of Law ("Joint Decl."), ECF No. 28-2, ¶ 7. Moreover, the millions of dollars in Settlement benefits will be distributed automatically to Settlement Class Members via direct deposit or check, with no claims process and no reversion to the Defendant.

The Settlement easily satisfies all Eleventh Circuit criteria for final approval and its terms are consistent with similar bank fee settlements.

## FACTS AND PROCEDURAL HISTORY

On June 3, 2021, Plaintiff filed a putative class action Complaint in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, entitled *Abercrombie v. TD Bank, N.A.*, No. CACE-21-11047. ECF No. 1-2. On behalf of a putative nationwide class, the Complaint asserted claims for breach of contract and breach of the covenant of good faith and fair dealing relating to Defendant charging Retry OD Fees on items that had previously been presented for payment, returned due to insufficient funds, assessed a non-sufficient funds fee, and then subsequently had been re-submitted by a merchant or third-party for payment again when the account had insufficient funds to cover the transaction. *Id.*

On July 6, 2021, Defendant filed a Notice of Removal under 28 U.S.C. § 1446, removing the state court action to this Court. ECF No.1.

On August 13, 2021, Defendant filed a Motion to Dismiss Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 19. Defendant argued that its Personal

Deposit Account Agreement ("PDAA") expressly authorized it to assess Retry OD Fees. Plaintiff opposed the Motion on September 10, 2021. *Id.*

Between June and September 2021, the Parties engaged in informal discovery and exchanged information, in the context of seeking to resolve the claims through direct negotiations. Joint Decl. ¶ 5.

On September 15, 2021, the Parties reached agreement in principle and executed a settlement term sheet. *Id.* ¶ 6.

On September 15, 2021, the Parties filed their Joint Notice of Settlement and Request to Suspend Deadlines, which resulted in the Court's Order on Notice of Settlement and Denying All Pending Motions as Moot. ECF Nos. 23, 24.

Thereafter, the Parties negotiated and agreed to all the Settlement terms and conditions resulting in the signing of the comprehensive Agreement dated November 1, 2021. ECF No. 28-1.

On November 1, 2021, Plaintiff filed the Unopposed Motion for Preliminary Approval of Class Action Settlement and Incorporated Memorandum of Law, which the Court granted on March 25, 2022. ECF No. 28, 31.

## KEY SETTLEMENT TERMS

The proposed Settlement provides for the following:

- Certification, for settlement purposes only, of a Settlement Class defined as: All current and former holders of TD Bank, N.A. consumer checking accounts who, from June 1, 2015 through and including April 30, 2021, were assessed at least one Retry OD Fee. Settlement § III.

- A cash payment by Defendant of $4,245,000.00 into the Settlement Fund to be used for payment of Settlement Class Member Payments, attorneys' fees and expenses, Settlement Administration Costs, and any Service Award approved by the Court, with direct payments of the Net Settlement Fund to be made directly to Settlement Class Members on a *pro rata basis* (based on the number of Retry OD Fees each Settlement Class Member was assessed) through an account credit or check, without the need for Settlement Class Members to submit a claim or take any other action. Settlement §§ IV, IX.

- Any residual uncollected funds from the first distribution of the Settlement Fund to be paid out in a second distribution, if economically feasible, and ultimately distributed as a *cy pres* payment for residual funds that remain if no second distribution is made or if residual funds remain after the second distribution, with *no* reversion of the Settlement Fund to Defendant. Settlement § X.

- Upon the Effective Date, the release of Defendant from claims up through the date of Preliminary Approval relating to the assessment of Retry OD Fees. Settlement § XI.

**PRELIMINARY APPROVAL AND NOTICE TO THE SETTLEMENT CLASS**

On March 25, 2022, the Court entered the Preliminary Approval Order, ECF No. 31, granting preliminary approval to the Settlement. The Court found that it would "'likely be able to' grant final approval to the settlement as a 'fair, reasonable, and adequate' compromise" and that it would "'likely be able to' certify the class for purposes of entering judgment on the settlement." *Id.* ¶ 10. The Court approved and directed that Notice be sent to the Settlement Class, established that members of the Settlement Class be permitted until July 23, 2022, to object to or opt-out of the Settlement, and set a final approval hearing for September 7, 2022. *Id.* ¶¶ 24–26, 29.

On May 24, 2022, the Settlement Administrator distributed the Court-approved Notice of the Settlement to 214,428 Settlement Class members. Declaration of Robert Coomes Regarding Implementation of Notice and Claims Administration ("Notice Decl."), attached as *Exhibit A*, Notice Decl. ¶¶ 7–19. The notice is estimated to have reached 98.24% of all Settlement Class members. *Id.* ¶ 18. The Settlement Administrator sent the Long Form Notices by mail to Settlement Class members who requested it. The Settlement Administrator also established a Settlement Website and a toll-free information line. *Id.* ¶¶ 20–23. Through August 1, 2022, 7,210 visitors accessed the Settlement Website, and 957 calls were made to the toll-free information line. *Id.* ¶¶ 20, 22.

**NO SETTLEMENT CLASS MEMBERS OBJECT TO THE SETTLEMENT**

The deadline for Settlement Class Members to object to the Settlement passed on July 23, 2022. *Id.* ¶ 25. The Settlement Administrator received *no* objections to the Settlement, and only two people out of more than 214,000 Settlement Class members chose to opt-out. *Id.* ¶¶ 24–25.

**DISCUSSION**

**I.    The Court should grant final approval to the proposed Settlement.**

The Court should grant final approval to the Settlement for all of the reasons it granted preliminary approval, and for the additional reason that, after completion of the Notice Program as required by the Court, not a single Settlement Class Member objects to the Settlement, and only two Settlement Class members opted out. This strongly supports that the Settlement Class members view the Settlement as a fair, reasonable, and adequate compromise that the Court should approve.

    **A.    The legal standard for final approval.**

The Eleventh Circuit recognizes the strong public and judicial policy favoring the settlement of class-action lawsuits. *See, e.g.*, *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th

Cir. 1992) (citing *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)); *Lee v. Ocwen Loan Servicing, LLC*, 14-CV-60649, 2015 WL 5449813 *4 (S.D. Fla. Sep. 14, 2015). "A class may be certified 'solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue.'" *Smith v. Wm. Wrigley Jr. Co*., No. 09-cv-60646, 2010 WL 2401149 at *3 (citation omitted). Approval of a class action settlement is a two-step process. *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. 2007).

The Court previously granted preliminary approval, finding that it would "'likely be able to' grant final approval to the settlement as a 'fair, reasonable, and adequate' compromise" and that it would "'likely be able to' certify the class for purposes of entering judgment on the settlement." ECF No. 31 ¶ 10. Since that time, nothing has occurred to undermine that initial determination, and it has only been bolstered by the positive response of the Settlement Class members in not objecting to the Settlement. "[A] low number of objections suggests that the settlement is reasonable," *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014), and here there are *no objections*. Notice Decl. ¶ 25.

**B.   The Settlement satisfies the requirements for final approval.**

Each of the relevant factors weighs in favor of final approval of this Settlement. First, the Settlement is the product of good-faith, informed, and arm's-length negotiations by competent counsel and was reached in the absence of collusion. Joint Decl. ¶ 12. This Action concerns a specific fact pattern, namely when a check or electronic payment is returned for insufficient funds and assessed an NSF Fee, then re-presented by the merchant or other third party and assessed an Overdraft Fee. *Id.* ¶ 4. Over the course of three years, Class Counsel here extensively litigated a similar case in the Southern District of New York, *Perks v. TD Bank, N.A.*, No. 1:18-cv-11176-VEC. *Id.* Their deep familiarity with the common issues in the two cases allowed for early, well-

informed settlement negotiations in this matter. *Id.* Well aware of the legal issues and damages at issue in this matter, the Parties engaged in arms-length settlement discussions for several months, after this litigation commenced. *Id.*

Furthermore, a review of the factors related to the fairness, adequacy, and reasonableness of the Settlement demonstrates that it fits well within the range of reasonableness. Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Joint Decl. ¶¶ 9–10. Plaintiff and Class Counsel believe that the claims asserted are meritorious and that Plaintiff would prevail if this matter proceeded to trial. *Id.* Defendant continues to assert that, absent this Settlement, the claims lack merit, that the claims are subject to defenses, including that at least some of the claims have already been released in a prior action, and that Defendant has defenses to class certification and would prevail if the matter reached trial or on appeal. *Id.* The Parties concluded that the Settlement benefits outweigh the risks and uncertainties attendant to continued litigation that include, but are not limited to, the risks, time, and expenses associated with class certification, completing merits discovery, pretrial motions, trial, and final appellate review, particularly in the context of complex litigation. *Id.*

### 1. The Settlement is the product of good faith, informed, and arm's-length negotiations.

A class action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

The Settlement here is the result of arm's-length and non-collusive negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this case in particular. Joint Decl. ¶¶ 3–4, 12; *Bennett*, 737 F.2d 982, 986 (11th Cir. 1984) (noting that settlement must be free of collusion); *see also Cotton*, 559 F.2d at 1330; *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007).

Furthermore, Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases—including in the closely related Perks action against TD Bank. Joint Decl. ¶ 3–4. Class Counsel zealously represented their clients throughout the litigation and in negotiations. *Id.* ¶ 5. And their expertise in bank fee litigation allowed them to assess this Action to determine the best possible resolution for the Settlement Class. *Id.* ¶¶ 3–5.

In negotiating the Settlement, Class Counsel had the benefit of years of experience, a familiarity with the legal and factual issues pertinent to this Action, as well as other cases involving similar claims and defenses. *Id.* ¶¶ 3–4. As detailed above, Class Counsel conducted a thorough investigation and analysis of Plaintiff's and the Settlement Class's claims and engaged in necessary factual discovery relating to the potential recovery. *Id.* Class Counsel's experience and knowledge of the legal claims and issues prepared them for well-informed settlement negotiations. *Id. See also Francisco v. Numismatic Guar. Corp. of Am.*, 2008 WL 649124, *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation"). Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, as well as the appropriate basis upon which to settle them, as a result of their prosecution of litigation against numerous other banks across the country. Joint Decl. ¶¶ 3–4.

### 2. The relevant factors support that the Settlement is fair, adequate, and reasonable.

The *Bennett* factors all support that the Settlement is fair, reasonable, and adequate, and that the Court should grant final approval.

#### (a) Likelihood of Success at Trial.

Plaintiff and Class Counsel are confident in the strength of their case but are pragmatic in their awareness of the various defenses available to Defendant and the risks inherent to continued litigation. Joint Decl. ¶¶ 9–10. As noted above, at the time the Parties agreed to settle, Plaintiff's Complaint was subject to a motion to dismiss, which, if granted, would result in no recovery at all. *Id.* Even if Plaintiff were to survive the motion to dismiss, she would face hurdles (and significant delay and cost) in seeking to certify a class adversarially, and Defendant has significant arguments on summary judgment, including arguments that many of the claims were already released in a prior class action, not to mention the inherent risks of any trial, and on post-judgment appeal. *Id.* Under the circumstances, Class Counsel appropriately determined that the benefits of the Settlement outweigh the gamble and delay of continued litigation. *Id.* Even if Plaintiff prevailed at trial, any recovery could be delayed for years by an appeal. *Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement). This Settlement provides substantial relief to Settlement Class members, without further delays.

#### (b) Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement Is Fair.

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

Courts have determined that settlements may be reasonable even where plaintiffs recover only a small part of their actual losses. *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate"). "The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

The $4,245,000.00 common fund, cash recovery in this Action is outstanding, particularly given the complexity of the litigation and the significant risks and barriers that loomed in the absence of Settlement including, but not limited to, Defendant's motion to dismiss, and the other risks discussed above. Joint Decl. ¶ 13. One of the litigation risks facing Plaintiff here concerns the scope of class-wide damages. *Id.* Class Counsel's view is that if they certified a class and were successful in all respects through trial and on appeal, damages would be approximately $13 million. *Id.* Defendant, however, would have argued strenuously that maximum class-wide damages were less than $5 million, and that Settlement Class members' claims related to the majority of the Retry OD Fees underlying the estimated class-wide damages here were released in an earlier class action settlement involving Defendant. *See In re: TD Bank, N.A. Debit Card Overdraft Fee Litig. (MDL No. 2613)*, No. 6:15-mn-02613-BHH, Final Approval Order, ECF No. 233 (D.S.C. Jan. 9, 2020). Consequently, according to Defendant's view, the $4,245,000.00 Settlement Fund represents more than 80% of the Settlement Class's most probable damages recovery. Joint Decl. ¶ 13. Whether Defendant's analysis is correct or Plaintiff's is (or something in between), there can be no doubt that this Settlement is a fair and reasonable recovery for the Settlement Class in light of the Defendant's defenses, and the challenging and unpredictable path of litigation Plaintiff and the Settlement Class would have faced absent a settlement. *Id.*

### (c) Complexity, Expense, and Duration of Litigation.

Class action litigation is inherently complex, and this case involved complicated bank processing practices and would require significant expert analysis and a large expenditure of public and private resources and, given the relatively small value of the claims of the individual class members, would be impracticable. Thus, the Settlement is the best vehicle for the Settlement Class to receive the relief to which it is entitled in a prompt and efficient manner. Joint Decl. ¶ 10. These considerations, and the other considerations noted above, militate heavily in favor of the Settlement. *See Behrens*, 118 F.R.D. at 542 (noting likely "battle of experts" at trial regarding damages, which would pose "great difficulty" for plaintiffs).

### (d) Stage of the Proceedings.

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiff had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324. The Settlement was reached after briefing on the merits and after an exchange of sufficient data with which to estimate class-wide damages. Joint Decl. ¶¶ 4–5. As a result of this information, and their voluminous experience in similar bank fee litigation, including against Defendant, Class Counsel were extremely well-positioned to confidently evaluate the strengths and weaknesses of Plaintiff's claims and prospects for success on Defendant's motion to dismiss, on class certification, at summary judgment, at trial, and in a post-judgment appeal. *Id.* This factor favors approval.

### (e) Response of Settlement Class Members to the Settlement.

Finally, and perhaps most importantly, the reaction of Settlement Class Members to the Settlement has been uniformly positive. Out of over 214,000 Settlement Class Members, not a single Settlement Class Member objects to the Settlement and only two people have opted out. As

this Court has recognized, "a low number of objections suggests that the settlement is reasonable," *Saccoccio*, 297 F.R.D. at 694.

\* \* \* \*

Based on the foregoing, all of the relevant factors support that the Settlement is fair, reasonable, and adequate, and the Court should grant final approval.

### C. Certification of the Settlement Class for purposes of judgment is appropriate.

For purposes of entering judgment on the Settlement, Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class defined in Section III of the Settlement for purposes of entering judgment on the Settlement. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the settlement class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

As the Court already concluded in granting preliminary approval, all of these requirements are met. The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of over 214,000 Account Holders of Defendant from across the country, and the joinder

of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted). Here, the commonality requirement is readily satisfied. There are multiple questions of law and fact—centering on Defendant's practice of charging Retry OD Fees—that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers central to the viability of the claims.

For similar reasons, Plaintiff's claims are coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members"). Plaintiff is typical of absent Settlement Class members because she was subjected to the same practices of Defendant in charging Retry OD Fees as the absent Settlement Class members.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representatives have interests antagonistic to the class; and (2) whether the proposed class counsel has the competence

to undertake this litigation. *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 314 (S.D. Fla. 2001). The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions, including consumer actions similar to this Action. Class Counsel have devoted substantial time and resources to vigorous litigation of the Action. *Id.*

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). The Rule 23(b)(3) predominance requirement is readily satisfied because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member. For example, each Settlement Class member's relationship with Defendant arises from the PDAA that is the same or substantially similar in all relevant respects to other Settlement Class members' PDAAs. *See Sacred Heart Health Sys.*, 601 F.3d at 1171 ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment."). Further, the resolution of thousands of claims in one action is far superior to individual lawsuits because it promotes

consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

For these reasons, the Court should the Settlement Class for purposes of entering judgment on the Settlement.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court enter the [Proposed] Final Approval Order, attached hereto as ***Exhibit B***, which grants final approval to the Settlement and certifies the Settlement Class for purposes of entering judgment on the Settlement, fully resolving this litigation. In granting this relief, the Court should also grant Plaintiffs' pending Unopposed Motion for Award of Attorneys' Fees to Class Counsel and Service Award from Class Action Settlement and to Approve Separate Settlement Payment to Plaintiff. ECF No. 33.

Dated: August 2, 2022

Respectfully submitted,

*/s/ Jeff Ostrow*
Jeff Ostrow
Jonathan M. Streisfeld
KOPELOWITZ OSTROW P.A.
One W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
ostrow@kolawyers.com
streisfeld@kolawyers.com

Lynn Toops (*pro hac vice* to be filed)
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
ltoops@cohenandmalad.com

        Jeffrey Kaliel
        KALIEL PLLC
        1100 15th Street NW, 4th Floor
        Washington, DC 20005
        Telephone: (202) 320-4783
        jkaliel@kalielpllc.com

        *Attorneys for Settlement Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will automatically send email notification to all counsel of record.

Dated: August 2, 2022          */s/ Jeff Ostrow*
                                                     Jeff Ostrow